# COUNTY OF SUFFOLK



**STEVE BELLONE**
**SUFFOLK COUNTY EXECUTIVE**

| | |
|---|---|
| **DENNIS M. COHEN** | **DEPARTMENT OF LAW** |
| **COUNTY ATTORNEY** | |

July 23, 2021

Hon. A. Kathleen Tomlinson, U.S.M.J.
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722

Re:  *Milo Tyler v. Shawn Petersen, et al.*
       Index No. 20-cv-6186 (JMA)(AKT)

Dear Judge Tomlinson:

   Please accept this letter as the County Defendants' preliminary Narrative Statement pursuant to your Scheduling Order dated May 5, 2021.

I.   THE FACTS WHICH DEFENDANTS ANTICIPATE PRESENTING AT TRIAL

   The plaintiff has filed a complaint alleging 22 incidents in which he claims he suffered a violation of his constitutional rights ranging from allegations of denial of medical care to the use of excessive force.   The defendants address each incident as below.   Approximately nine of the claims involve the denial of medical care.  Notwithstanding a request by the defendants that the plaintiff provide signed HIPAA release forms so that we may obtain his medical records, to date the plaintiff has not provided the necessary releases.[1]   The defendants responses below are made without the benefit of those records, however, based on the nature of the complaints we do not believe the plaintiff has any viable claims.

1) September 12, 2020 -  Plaintiff alleges the use of excessive force by Suffolk K-9 Police Officer Shawn Petersen through the use of his K-9 partner Brick.   Plaintiff was stopped by a member of the Head of the Harbor Police Department for speeding. Plaintiff was in possession of marijuana and pills.  When exiting the vehicle the plaintiff tried to flee.  In attempting to apprehend the plaintiff, the police officer felt a handgun in the plaintiff's waistband.   Plaintiff was able to break free and  fled.   He was located by Brick under a heavy brush in a wooded area.   Plaintiff was given several commands to show his hands but refused and attempted to flee again.   He was apprehended by canine Brick on his left calf.   Based on the plaintiff's conduct the force used was entirely reasonable.

---

[1] A follow up request with new HIPAA forms was sent on July 22, 2021 to the plaintiff at the Suffolk County Jail.

Witnesses:   Police Officer Shawn Peterson
Police Officer Thomas Lohman – Head of the Harbor
Emergency Service Officers P.O Charley and P.O Gisbert.

Exhibits:    Photos of evidence recovered from plaintiff including the weapon.
Photos of plaintiff's injury.

**Claims alleging Denial of Medical Care at the County Jail:**

3) September 20, 2020 - Plaintiff alleges he was not given medication in proper doses.

4) October 5, 2020 - Plaintiff claims a nurse applied a dirty bandage to his wound.

6) October 5, 2020 - Plaintiff claims his wheelchair was discontinued by the medical unit

8) October 5, 2020 - Plaintiff claims a Corrections Officer made the plaintiff walk with crutches instead of a wheelchair.

9) October 5, 2020 - The nurse in the Yaphank facility would not prescribe a wheelchair.

10) October 8, 2020 - Claims his crutch broke causing him to fall. Says the Doctor only gave him a knee brace when he wanted a wheelchair.

12) November 11, 2020 - Claims that the Doctor in Yaphank discontinued his use of a wheelchair.

15) November 20, 2020 - Claims that he made complaints of various ailments to a nurse and that she refused to give him medical treatment and telling him that if he did not walk it would be considered a refusal of his part of medical treatment.

17) November 20, 2020 – Claims that after an altercation with Corrections Officers he suffered an injury to his jaw and that the Doctor improperly treated him and that it was later revealed that he had a broken jaw.

The defendants respectfully submit that all of the above claims do not rise to the level of a constitutional violation in that no medical professional was deliberately indifferent to any serious medical need of the plaintiff. The evidence will reveal that the plaintiff simply disagreed with the treatment he was provided. Regarding claim 17) at best the plaintiff pleads a claim of malpractice which is insufficient to sustain a claim under 42 U.S.C. § 1983.

Witnesses:   Dr. Frederick Caston and other Suffolk County Jail medical personnel that will be identified in the plaintiff's medical records once received.

Exhibits -    Plaintiff's Suffolk County Jail Medical and Mental Health records; records from Peconic Bay Hospital; and records from Stony Brook University Hospital.

2) September 25, 2020 – Plaintiff claims that a Corrections Officer pulled his wheelchair out from under him causing him to fall.    On September 25, 2020, plaintiff in medical housing. He was instructed by Corrections Officer David Warfield to go into a treatment room for wound care.  Plaintiff became belligerent and started yelling and cursing.  He also started rolling his  wheelchair toward the exam room while continuing to yell and stating "This is bullshit, this bitch is fucking late."   Due to his agitated state, the Officer was concerned that Tyler was  going to confront the nurse and told Tyler to stop rolling forward in his wheelchair.    The plaintiff did not stop so the Officer grabbed the handle to the wheelchair  to prevent him from     entering the room.   Tyler then rolled forward out of his wheelchair and on to the floor.   The  Officer asked Tyler if he was OK and he responded by cursing at the Officer.   Eventually he was returned to his wheelchair and examined by the nurse.   Tyler experienced no injury from  the incident.  The force used by the officer was not excessive and the plaintiff suffered no injury.

Witnesses:  Corrections Officer David Warfield, Nurse Margaret Edwards, Corrections Sergeant                     John Zorcik.

Exhibits:  Plaintiff's medical records from Suffolk County Jail.


5) October 5, 2020 – Plaintiff claims that Corrections Officers conspired to deny him use of a wheelchair.     On October 5, 2020 while returning from the exercise yard to medical housing, the plaintiff turned his wheelchair into the medical corridor and positioned himself in a many that blocked the entrance into the dental offices.   The plaintiff was directed by Corrections Officer Jack DeLorenzo to move but refused saying "I'm not leaving until I see a doctor."  Corrections Sergeant Donald Sherrill responded and directed the plaintiff to move.  The plaintiff then told the Sergeant that he had faked his desire to go to the yard so that he could go to medical and demand treatment for wound care.   Sergeant Sherrill told the plaintiff that he was already scheduled for wound care to which the plaintiff responded "Fuck that, I ain't moving! I'm not going anywhere until I see a nurse."     Members of the Jails SERT team were called to assist moving the plaintiff.  Eventually the plaintiff voluntarily moved and returned to his cell.   Upon returning to his cell the plaintiff remained obstinate and cursed at the Sergeant.   Disciplinary charges were filed against the plaintiff for his conduct.    Subsequent to the incident, it was determined by the medical unit that the plaintiff no longer needed a wheelchair and was provided crutches.   No Officer conspired to deny the plaintiff of a wheelchair and the determination to remove his wheelchair status was made by the medical unit.

Witnesses:   Corrections Officer Jack DeLorenzo, Sergeant Donald Sherrill

Exhibits:  Plaintiff's disciplinary documents; Plaintiff's Suffolk County Jail medical records.


7) October 5, 2020 – Plaintiff claims Corrections Officers used excessive force while transporting him from the Sheriff's vehicle into the Riverhead facility.    On October 5, 2020 the plaintiff was transferred from the Yaphank Facility to the Riverhead Facility via a Sheriff's Office vehicle.   Upon arriving at Riverhead, the plaintiff refused to get out of the Sheriff's vehicle and said "I'm not going to use those crutches."   Tyler was directed to use the crutches but he refused.    After confirming with the medical unit that the plaintiff would need crutches to walk, but did not need a wheelchair, Corrections Sergeant Paul Fiume instructed Corrections

Officers Matthew Geremia and Harvey Houpe to assist Tyler out of the vehicle and into the facility. During the escort the plaintiff refused to stand on his feet and use the crutches as instructed. He continued to drop to the ground while the Officers tried to bring him to his cell. He became actively non-compliant and would not bear any of his own weight during the escort, causing the Officers to bear all on Tyler's body weight at several points during the escort. After being brought to his cell, Tyler was evaluated by Nurse Maryann Jadick who determined he needed further medical attention. Any injury suffered by the plaintiff was due to his own non-compliance and continual refusal to assist in his own transport.

Witnesses: Corrections Sergeant Paul Fiume, Corrections Officers Matthew Geremia and Harvey Houpe, Nurse Maryann Jadick.

Exhibits: Plaintiff's medical records from Suffolk County Jail and Peconic Bay Hospital, Plaintiff's disciplinary documents.

11) October 27, 2020 - Plaintiff claims he was forced to walk without his crutches, that an Officer yanked on his shirt by the sleeve and made sexual comments. There are no reports or documents regarding any event relating to the plaintiff's allegations. The defendants submit that the event is a fabrication. Also, the claim on its face fails to establish a constitutional violation.

Witnesses: Officers working in the Yaphank Booking area on the date of the claim.

Exhibits: Plaintiff's Suffolk County Jail Medical Records.

13) and 18) November 11, 2020 – Plaintiff claims he was subjected to the use of excessive force in his cell and that he was punched in the face. On November 11, 2020, the plaintiff made inquiry of Corrections Officer Michael Budd about his wound care appointment. The Officer told Tyler that once he would check with medical after he finished a task. Tyler then became irate and belligerent and cursed at the officer saying he was a "fucking lazy ass." The officer ordered Tyler to lock into his cell but Tyler refused. He then spit at the officer hitting the officer in his shirt. Tyler was order again to lock into his cell but refused. Two additional officers entered the dorm area and ordered Tyler to lock in his cell which he did. Tyler then stood up out of his wheelchair and started throwing his property box at the door of his cell. He continued doing this several times while threatening to kill Corrections Officer Budd. He then took the top off of his property box and began to strike the window in his cell. Tyler eventual ceased his conduct but was then transported to the medical unit to evaluate his need for a wheelchair.

The medical unit determined that Tyler did not need a wheelchair and that he could walk of his own accord. Tyler then refused to leave the medical unit. He was then assisted by members of the SERT unit from his wheelchair into a restraint chair to be transported to a cell while awaiting classification. While in the restraint chair, wellness checks were conducted by Nurse Winiarski at intervals no greater than 30 minutes. During this time a search of Tyler's cell revealed a noose made from plastic bags and a homemade knife. Based on the discovery f the noose, Dr. Vincent Geraci directed that the plaintiff be placed on suicide watch and put in a stripped cell until he could be evaluated by the mental health staff. Tyler was then transported to the Riverhead Facility to be house in the Behavior Modification Housing Unit (BMHU). The only force used against the plaintiff was that used to transfer him from the wheelchair into the

restraint chair and to secure him to the chair.     Due to his violent behavior, an order was issued that the plaintiff be placed in cuffs and shackles with a spit mask during transport.

Witnesses:   Corrections Officer Michael Budd,  Sergeant Kevin Flaherty,  Corrections Lieutenant Kane, SERT Officers Xikis, Grover, Shadell and Berkowitz, Nurse Nancy Winiarski.

Exhibits – Plaintiff's disciplinary records and Suffolk County Jail Medical Records.

14) November 11, 2020 – Plaintiff claims that unnamed Sergeant stole his papers and destroyed them.   There are no records of any event occurring relating to the alleged destruction of the plaintiff's property.

Witnesses – Corrections Officers assigned to the plaintiff's housing unit at the time of the claim.

Exhibits:  None.

16)   November 20, 2020 – Plaintiff claims he was subjected to the use of excessive force and that he suffered a broken jaw.   On November 20, 2020 while the plaintiff was house in the BMHU, Corrections Officer Brian Leonard informed the plaintiff that he had been called down for medical and that he needed to stand at his gate so that mechanical restraints could be applied.  Tyler refused and said "I'm not going. They're gonna have to come and get me."
Officer Leonard gave Tyler several more commands to stand at his gate but he refused.

Corrections Lieutenant Michael Ervolino arrived with a SERT team and advised the plaintiff that he had to get up and get dressed to go to medical.   The plaintiff dressed and sat on the edge of his bed but refused to stand saying "I'm not going anywhere without a wheelchair."  Lieutenant Ervolino contacted Dr. Frederick Caston of the Jail Medical Unit who advised that the plaintiff must be brought to the medical unit and could not refuse.     After conferring with Corrections Captain Michael Otten, it was determined that an extraction team would be used to  remove Mr. Tyler from his cell to transport him to medical.   Upon entering the cell, the plaintiff resisted the efforts of the extraction team.  Corrections Officer Alex Kretz pushed the plaintiff onto the bed with the extraction shield.  After a brief struggle the plaintiff was fully secured and placed into the restraint chair.    Plaintiff was then brought to the medical unit and examined by Dr. Caston.  Plaintiff was then returned to his cell.   Later that day the plaintiff was seen lying on the floor of his cell.  He was then taken to Peconic Bay Hospital and it was determined that he had suffered an injury to his jaw.    Any injury suffered by the plaintiff was due to his own refusal to follow command and his resistance to the actions of the extraction team which were reasonable and necessary under the circumstances.

Witnesses:  Corrections Officer Brian Leonard, Corrections Lieutenant Michael Ervolino, Corrections Sergeant Larry Wojtach, Corrections Officer Daniel Shaw, Corrections Officer Ryan Ramnath, Corrections Officer Darren Dobrinert, Corrections Officer Louis Perotti, Corrections Officer Alex Kretz, Dr. Frederick Caston.

Exhibits:  Video of the extraction of the plaintiff from his cell, plaintiff's Suffolk County Medical Records, Peconic Bay Medical Records and Stony Brook University Medical Records.

19) October 5, 2020 and November 12, 2020 – Plaintiff claims that the Suffolk County Jail Grievance coordinator was throwing away his grievances.   Plaintiff has filed more than 25 grievances while an inmate at the Suffolk County Jail, including grievances for which he received a determination on October 5, 2020.   The defendants submit that the plaintiff's claim is baseless and fails to allege a constitutional violation.

Witnesses:   Grievance Coordinator Corrections Officer  Russell Turpin.

Exhibits:    Other grievances filed by the plaintiff including grievance Y-2020-137.

20) November 24, 2020 through December 7, 2020 – Plaintiff claims he was not given sufficient access to the law library and that as a result he was denied access to court.   Plaintiff's claim is meritless, as he has been able to file numerous documents and lawsuits with the court throughout his period of incarceration.

Exhibits:    Plaintiff's filings with the court during the his period of incarceration.

21) Plaintiff demands that Officers display their names on their uniforms.   This is not a constitutional claim.

22) September 12, 2020 to the present – Plaintiff alleges supervisory liability against Warden Michael Franchi.   As there are no underlying violations made out above, there can be no supervisory liability claim against Warden Franchi.  Nor is there evidence  that Warden Franchi was personally involved in the alleged claims.   Lastly, to the extent the claim can be construed as a *Monell* claim against the County, the plaintiff fails to present any evidence that a County policy custom or procedure was the proximate cause of his alleged injuries.

I thank the Court for its consideration of this submission.

Respectfully submitted,

DENNIS M. COHEN
Suffolk County Attorney

By:    */s/ Brian C. Mitchell*
       Brian C. Mitchell
       Assistant County Attorney

Cc:    Milo D. Tyler #761477
       Suffolk County Correctional Facility
       110 Center Avenue
       Riverhead, New York 11901